# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LEAF FUNDING, INC.,          )
                                   )
          Plaintiff,        )
                                   )
v.                                )
                                   )       No. 07-2568-CM
                                   )
CUSTOM HIGHLINE, L.L.C., et al.  )
                                   )
          Defendants.     )

## MEMORANDUM AND ORDER

In this breach of contract action, plaintiff LEAF Funding, Inc. asserts joint and several liability against the four defendants named in the case.  Three of these four defendants have failed to appear or otherwise defend.  This case is before the court on two dispositive motions filed by plaintiff.   Plaintiff seeks default judgment against defendants Custom Highline, L.L.C., Zarif Haque, and Custom Highline Wholesale, L.L.C., jointly and severally in the amount of $103,990.48 plus interest at the rate of 1.5 percent per month from and after November 1, 2007,  and also reasonable collection costs and attorney fees (Doc. 11.)  Plaintiff also seeks summary judgment against answering defendant David Rueschoff and an award of damages in the amount of $103,990.48 plus interest at the rate of 1.5 percent per month from and after November 1, 2007, plus collection costs and attorney fees (Doc. 24.)  The court addresses plaintiff's motion for default judgment against defendants Custom Highline, Haque, and Custom Wholesale, and plaintiff's motion for summary judgment against defendant Rueschhoff.  For the following reasons, the court grants in part and denies in part both motions.

### I.  Factual Background

On December 4, 2007, plaintiff filed this case with the following allegations:  Plaintiff is a Delaware corporation.  Defendants are citizens of Kansas, or a business located in Kansas.  On May 30, 2007, Five Point Capital, Inc. ("Five Point") leased equipment to Custom Highline pursuant to a Lease Agreement.  (Doc. 12-2, Ex. A.)  Under the agreement, Custom Highline was to make 60 monthly payments of $1,894.18.

As security for this lease, defendants Haque and Rueschhoff signed a Lease Guarantee, (Doc. 12-2, Ex. A; 12-3, at 2), in which they jointly and severally guaranteed that Custom Highline would comply with the lease.  Custom Wholesale also signed a guarantee of the lease, under which it guaranteed prompt payment of all rent owed by Custom Highline.  Custom Highline received the equipment under the lease.  On June 12, 2007, Five Point assigned its interests in the lease to plaintiff.   (Doc. 12-2, Ex. D.)  Custom Highline is now in default under the lease.

Plaintiff's complaint stated three claims: (1) because Custom Highline is in default, it owes plaintiff the sum of $103,990.48, plus interest at the rate 1.5 percent per month after November 1, 2007, plus reasonable collection costs and attorney fees; (2) Haque and Rueschhoff jointly and severally owe plaintiff the same sums, and Custom Wholesale also owes plaintiff the same sum; and (3) plaintiff has immediate right to possession of the equipment.

Only David Rueschhoff answered the complaint.  No other defendant has entered an appearance in this case.  On January 25, 2008, plaintiff filed this motion for default judgment against the "non-answering" defendants.  The Clerk of the Court entered default on January 29, 2008, as to Custom Highline, Haque, and Custom Wholesale.

Separately, plaintiff filed a motion for partial summary judgment against Rueschhoff.  On

May 8, 2008, Rueschhoff submitted his response, which questioned several of the facts asserted or omitted by plaintiff, such as when Custom Highline defaulted, the selection of the November 1, 2007 date, and plaintiff's efforts to mitigate damages.

After a hearing on plaintiff's motion for default judgment held May 9, 2008, plaintiff's motion was granted in part, and taken under consideration in part. Specifically, plaintiff's request for default judgment for replevin was granted. However, the court declined to issue a default judgment at the time, guided by the principle that, because consistent judgment "determinations are essential among joint tortfeasors, consistent damage awards on the same claim are essential among joint and several tortfeasors." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985).

Having reviewed the plaintiff's motion for summary judgment, defendant Reuschhoff's response, and all associated pleadings and other briefs, this court is now prepared to rule on plaintiff's motions for default judgment (Doc. 11) and for summary judgment (Doc. 24).

## II.  Plaintiff's Motion for Default Judgment against Custom Highline, Zarif, and Custom Wholesale

### A.    Judgment Standard

Once default is entered, a defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). Under Rule 55(b), "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing. . . " The claimed amount of damages must be supported with an affidavit or other evidence of actual damages.

### B.    Discussion

The pleadings, supported by the affidavit of James J. Grant, (Doc. 12, ex. 2), set out the amount of damages under the contract at $103,990.48, plus interest at the rate 1.5 percent per month after November 1, 2007.  Plaintiff also seeks attorney fees and collection costs, both of which are permitted under the terms of the lease agreement (Doc. 12-2, ex. A) and which are enforceable under applicable law.  *Farmers Cas. Co. v. Green*, 390 F.2d 188, 192 (10th Cir. 1968) (under Kansas law and traditionally, attorney fees can be awarded only if provided by contract or authorized by statute); *Santisas v. Goodin*, 951 P.2d 399, 403–412 (Cal. 1998) (same, attorney fees can be awarded only if provided by contract or authorized by statute).

However, when an action is brought against several defendants, charging them with joint liability, a question arises as to the effect of a default by fewer than all defendants.  The leading Supreme Court decision on the subject is *Frow v. De La Vega*, 82 U.S. 552 (1872), which holds that, as a general rule, when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants.  *See also Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145 (10th Cir. 1985). Under *Frow*, a plaintiff who prevails on liability against the nondefaulting defendants is entitled to a judgment against both the defaulting and nondefaulting parties.[1]  *Frow* has been construed narrowly to apply to cases in which the claims are joint and several.  *Hunt*, 770 F.3d at 147–48.  This is precisely the situation facing this court: plaintiff claims joint and several liability based on the breach of a contract guaranteed by each defendant.

In such a case, the amount of damages which plaintiff may recover from defaulting and

---

[1]  On the other hand, if the action is dismissed, it will be dismissed as to the defaulting party as well as the remaining defendants.  Similarly, a summary judgment in favor of the answering defendant(s) will accrue to the benefit of the defaulting defendant(s), just as, generally, the defenses, arguments, and evidence presented by an answering defendant will inure to the benefit of the defaulting defendant(s).

nondefaulting defendants should not differ.  *Hunt*, 770 F.3d at 147–48.  It is appropriate to enter

judgment solely as to liability and not as to the amount of damages to be assessed against the

defaulting party, since a separate determination of damages would pose the prospect of inconsistent

judgments.  *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp 975, 978 (S.D.N.Y. 1992); *Friedman v.

Lawrence*, 90 Civ. 5584, 1991 WL 206308 (S.D.N.Y. Oct 2, 1991); 10A Fed. Prac. & Proc. § 2690

(2008).  This court therefore grants the motion for default judgment against defendants Custom

Highline, Haque, and Custom Wholesale as to liability.

**III.     Plaintiff's Motion for Summary Judgment against David Reuschhoff**

**A.      Judgment Standard**

        Summary judgment is appropriate if the moving party demonstrates that there is "no genuine

issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(c).  In applying this standard, the court views the evidence and all reasonable inferences

therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the

proper disposition of the claim."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational

trier of fact could resolve the issue either way."  *Id.* (citing *Anderson*, 477 U.S. at 248).

**B.      Discussion**

        To succeed on a breach of contract claim, plaintiff bears the burden to establish: (1) the

existence of a contract between the parties; (2) sufficient consideration to support the contract; (3)

plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's

breach of the contract; and (5) damages to plaintiff caused by the breach.  *See* PIK Civ. 4th 124.01-

A.

### 1. Undisputed Facts

There is no dispute as to the facts supporting each of these elements.  The original lessor, Five Point, executed a lease agreement with Custom Highline on May 30, 2007, in which it agreed to lease certain equipment in exchange for 60 monthly payments of $1,894.18.  The lease stated:

> "In the event of a default by you, we can require that you return the Equipment to us and pay to us the remaining balance of all of the Rent due under this Lease, discounted to present value at five percent (5%), together with any other amounts due under this Lease.  We can also require that you pay to us our residual interest in the Equipment.  Interest shall accrue on all Obligations due us from the date of default until paid at the rate of eighteen percent (18%) per annum, but only to the extent permitted by law.  We shall also be entitled to recover from you all damages caused by that default, including any of our income tax benefits.  We can also use any of the remedies available to us under the UCC or any other law, including repossession of the Equipment or other Collateral.  You agree to reimburse us for all charges, costs, expenses and attorneys' fees that we have to pay to enforce this Lease or collect the Obligations under this Lease and in any lawsuit or other legal proceeding which we are required to bring or defend because of your default.  You also agree that in the event of a dispute related to or arising out of this Lease, the Lessor shall be entitled to recover its reasonable attorney's fees and costs.  If we have to take possession of the Equipment, you agree to pay the cost of repossession, storing, shipping, repairing and selling the Equipment. . . ."  (Doc. 1, Ex. A.)

There is no dispute that, to secure payment, Rueschhoff executed a lease guarantee in which he unconditionally guaranteed that Custom Highline would fully and promptly pay its obligation under the agreement, and, upon default, he agreed to pay in accord with the default provisions of the agreement.  Rueschhoff does not dispute receipt of equipment; assignment of the lease for value and in good faith; Custom Highline's default; or even his own joint and several liability.

Rueschhoff asserts instead that plaintiff (1) fails to present evidence regarding the date on which Custom Highline failed to make a payment due; and (2) fails to provide rationale for its request for interest from November 1, 2007, which, according to defendant, "appears to be a random date chosen out of thin air."  (Doc. 31, 4.)  Rueschhoff's contentions put no material facts in dispute.

**2. Rueschhoff's Defenses**

In opposition to summary judgment, Rueschhoff asserts three "defenses," which pose questions of law regarding standing, choice of law, and damages. For the following reasons, the court concludes that it is precluded from entering summary judgment on the issue of damages.

**a. Standing**

First, Rueschhoff argues the plaintiff lacks "standing" by pointing out that plaintiff was not a party to the original lease agreement. Rueschhoff fails, however, to come forward with any evidence to suggest that plaintiff is not a valid assignee of the agreement, or that plaintiff is not entitled to enforce the agreement. As a matter of law, an assignee of a contract, who stands in the shoes of the assignor, has direct standing to maintain an action to enforce the contract. *See generally* 6A C.J.S. Assignments § 125 (2008).

**b. Choice of Law**

Second, Rueschhoff questions plaintiff's citation to Kansas law in its motion for summary judgment. He suggests that the choice of law provision in the lease requires the court to apply California law. The court notes that the question of whether California or Kansas law applies is not material to the dispute over whether Rueschhoff's guaranty obligates him to plaintiff under the terms of the agreement. The choice of law may be relevant to the issue of damages. As a question of law rather than one of fact, it does not preclude summary judgment. Absent evidence that the chosen law is unreasonable, contravenes the forum state's strong public policy, or would preclude a remedy, the court will apply the law of the state chosen by the parties in a contract. *See SDJ Ins. Agency, L.L.C. v. Am. Nat'l. Ins. Co.*, 292 F.3d 689 (10th Cir. 2002); Am. Jur. Contracts §§ 261, 262 (2008).

At this point, the parties appear to agree that California law should apply. Regardless, both Kansas and California law recognize the cause of action here, and permit prejudgment interest and

attorney fees and costs.

### c. Measure of Damages

Rueschhoff asserts that plaintiff has failed to mitigate its damages; he claims he is entitled to assert mitigation of damages as a defense, and "to discover what, if anything, Leaf Funding has done to mitigate its rent damages."  (Doc. 36, at 7.)  This court must first determine whether, as a matter of law, evidence of mitigation is relevant to the issue of damages in this case.  The parties have briefed the issue, and suggest that the result depends on: (1) whether the agreement at issue here as characterized as either a "true lease" or a "security agreement"; (2) the agreement's terms, or lack thereof, regarding mitigation; and (3) the common law doctrine of mitigation of damages.  The court addresses each argument in turn.

### i.  "True Lease" or "Security Agreement"

Plaintiff asserts that defendants are not entitled to a credit or an offset from sale or relet of the equipment upon repossession because the lease agreement is a "true lease" rather than a "security agreement."  Plaintiff directs the court to an unpublished opinion from the Northern District of Illinois for this interpretation of the Uniform Commercial Code.  *Gen. Elec. Capital Corp. v. Palutsis*, No. 94-C-3782, 1995 WL 263459 (N.D. Ill., May 2, 1995) (applying Connecticut law). In *Palutsis*, plaintiff sought the accelerated lease balance, attorney fees, and incidental late charges for defendant's breach of an equipment lease.  Rejecting defendant's argument that damages should be offset by the amount plaintiff received from resale of the equipment, the court granted plaintiff's motion for summary judgment, holding that "[t]he critical factor in determining whether [defendant] is entitled to an offset of the damages is whether the agreement created a security interest in the equipment."  1995 WL 263459, at *1.  Having failed to indicate why this factor was critical, the *Palutis* court then ruled, without further explanation, that, because defendant failed to establish that

the agreement was a security agreement, "no reasonable jury could find that [defendant] is entitled to an offset of the damages in any amount." 1995 WL 263459, at *2.

Having cited this case, plaintiff's brief analyzes at some length whether the lease at issue here is a true lease or a security agreement. After concluding the agreement is a true lease, plaintiff summarily concludes that it is under no duty to mitigate its damages because the California Commercial Code does not require a lessor to mitigate if the contract does not so require.

Plaintiff is correct that the California Commercial Code sections governing leases of goods, Cal. Com. Code §§ 10101 *et seq.*, do not apply to security agreements, or leases disguised as security agreements. This fact does not, however, require this court to reach the conclusion reached in *Palutsis* or urged by plaintiffs: that if an agreement is a true lease, the lessor is "not required to mitigate its damages." (Doc. 35, at 9.) *Palutsis* stands out as the sole case citable for this proposition, and the court finds it unpersuasive.

## ii. Terms of Agreement

The court turns to plaintiff's claims that (1) the agreement here imposes no express duty on the lessor to mitigate, and (2) absent an express duty to mitigate, no such duty exists. The court agrees that, although the agreement clearly contains a damage provision, it is silent on the issue of mitigation. However, the court cannot agree with the plaintiff that this silence merits a presumption against mitigation of damages after default.

Under the California Code, a lease may provide for a liquidated damages formula. The formula provided here, *i.e.*, the sum of lease payments past due, accelerated future lease payments, and the lessor's estimated residual interest, plus tax indemnities, costs, interest and attorney fees, is a measure of damages that is common in leasing practice, but usually includes *an offset* for the net proceeds of disposition (whether by sale or release) of the leased goods notably absent here. *See*

*comments to* Cal. Com. Code § 10504.

### iii.  Doctrine of Mitigation

Under California law, the doctrine of mitigation of damages holds that:

 "[a] plaintiff who suffers damage as a result of either a breach of contract or a tort
has a duty to take reasonable steps to mitigate those damages and will not be able to
recover for any losses which could have been thus avoided.'  A plaintiff may not
recover for damages avoidable through ordinary care and reasonable exertion.  The
duty to mitigate damages does not require an injured party to do what is unreasonable
or impracticable.  'The rule of mitigation of damages has no application where its
effect would be to require the innocent party to sacrifice and surrender important and
valuable rights.'  Typically, the rule of mitigation of damages comes into play when
the event producing injury or damage has already occurred and it then has become the
obligation of the injured or damaged party to avoid continuing or enhanced damages
through reasonable efforts." *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686,
11691, 32 Cal. Rptr. 2d 329 (Cal. Ct. App. Dist. 4 1994) (citations omitted).

The burden of proving that losses could have been avoided by reasonable effort and expense
must always be borne by the party who has breached the contract.  *See Brandon & Tibbs v. George
Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 277 Cal. Rptr. 40 (Cal. Ct. App. Dist. 5 1990).

California case law suggests that there are certain situations in the contract or commercial
context in which the doctrine has been used sparingly.  26 Cal. App. 4th at 1691; *see, e.g., Seaboard
Music Co. v. Germano*, 24 Cal. App. 3d 618, 623, 101 Cal. Rptr. 255 (Cal. Ct. App. Dist. 4 1972);
*Capaldi v. Levy,* 1 Cal. App. 3d 274, 282, 81 Cal. Rptr. 629 (Cal. Ct. App. Dist. 2 1969); *Vitagraph,
Inc. v. Liberty Theatres Co.*, 197 Cal. 694, 697–699, 242 Pac. 709 (1925).  However, even these
cases acknowledge that, "[o]rdinarily, a person injured by the breach of an obligation has the duty to
minimize damages and avoid or reduce the loss suffered by the offender."  *Seaboard*, 24 Cal. App.
3d at 622, 101 Cal Rptr. at 257; *see Vitagraph*, 197 Cal. at 698.

 Absent authority clearly holding that mitigation is irrelevant in this context, the court finds
that the non-breaching party's duty to mitigate is the rule, not the exception.  But because it finds no

-10-

support for the deviation from the general principles of contract law proposed by plaintiff, the court concludes that evidence of mitigation, or lack thereof, is relevant to the issue of damages in this case.

### 3.  Conclusion

Plaintiff has established, and Rueschhoff does not dispute, the existence of the lease agreement; the existence of Rueschhoff's guaranty; the validity of the assignment from Five Point to plaintiff; that Custom Highline defaulted; and that plaintiff makes a demand for damages under the lease against the defendants, jointly and severally.  Based on the foregoing, plaintiff is entitled to summary judgment as to liability on its breach of contract claim against Rueschhoff.

However, in regard to damages, this court concludes that triable questions of fact remain that preclude summary judgment.  Plaintiff has alleged that, to the extent it was obligated to mitigate damages, it brought an action against Rueschoff; it asserted claims against Custom Highline; it sought and has been granted replevin; and upon repossession it intends to sell the equipment in a commercially reasonable manner.  Rueschhoff asserts that, to the best of his knowledge, plaintiff never demanded return of the equipment, or went to the premises to retrieve the equipment, and that the equipment has been and is still located on the premises.  (Doc 31, Ex. 1.)  As of the date of this order, a writ of replevin and order for delivery has been issued (Doc. 42), its execution stayed pending plaintiff's filing of a bond in this court.  (Doc. 43.)  The court finds that there are triable issues of fact as to the duty, extent, and effect of mitigation, which preclude entry of an award at this time.  Therefore, the case will proceed to trial on the issue of damages, and the court will enter a final judgment after plaintiff proves its damages.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Summary Judgment against Defendant Reuchhoff (Doc. 24) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiff's Motion for Default Judgment Against Defendants (Doc. 11) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** the parties will proceed to trial on the issue of damages, and the court will enter a final judgment in the case after plaintiff proves its damages.

Dated this 18th day of September 2008, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**